NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILLIE JENKINS, et al. | : | |
| Plaintiffs, | : | |
| v. | : | Civ. No. 06-2027 (JAP) |
| JOHN D'AMICO, et al. | : | |
| | : | **OPINION** |
| Defendants. | : | |

PISANO, District Judge.

Before the Court is a motion to dismiss, or in the alternative, for summary judgment, filed by Defendants Devon Brown and John D'Amico. *Pro se* Plaintiffs Willie Jenkins and James Jackson oppose Defendants' motion. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and decides this motion without oral argument as permitted by Fed. R. Civ. P. 78. For the reasons set forth below, the Court grants summary judgment in favor of the Defendants.

**I.      Background**

At the time Plaintiffs Willie Jenkins ("Jenkins") and James Jackson ("Jackson") filed their complaint, they were prison inmates incarcerated in Northern State Prison in Newark, New Jersey.[1] Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983 against State Defendants Devon Brown, the former Commissioner of the New Jersey Department of Corrections ("DOC") and John D'Amico, the Chairman of the New Jersey State Parole Board ("SPB"). Plaintiffs

---

[1] Jenkins is presently incarcerated in the Essex County Correctional Facility in Newark, New Jersey. Jackson remains incarcerated in Northern State Prison.

allege that certain statutes and policies of the DOC and SPB are unconstitutional.

  A.  **Willie Jenkins**

Plaintiff Willie Jenkins is serving a life sentence for murder, robbery and armed assault. On April 26, 1977, Jenkins was convicted of first-degree felony murder of a store employee during an armed robbery. He was sentenced to life imprisonment. On June 30, 1994, Jenkins was released on parole. On September 12, 1996, Jenkins' parole was revoked for his failure to report as instructed and for his illegal use of a controlled dangerous substance. On October 17, 1996, Jenkins was again released on parole subject to the following conditions: 1) that he participate in the Board's High Impact Diversion Program; 2) that he undergo random urine monitoring; 3) that he attend weekly meetings of Narcotics Anonymous; and 4) that he obtain and maintain steady employment. On March 28, 2000, Jenkins' parole was revoked for failure to notify his parole officer of an arrest and for his illegal use, possession or distribution of a controlled dangerous substance. The Board imposed a fifteen-month Future Eligibility Term ("FET').

On April 6, 2001, Jenkins was again granted parole subject to the following conditions: 1) that he undergo random urine monitoring; 2) that he undergo random alcohol monitoring; 3) that he receive outpatient drug/alcohol counseling; 4) that he attend weekly narcotics anonymous meetings; 5) that he refrain from alcoholic beverages; 6) that he obtain and maintain steady employment; and 7) that he participate in the alternative sanctions program. The Board again revoked Jenkins' parole on October 9, 2002, for his illegal use of a controlled dangerous substance. Again, the Board imposed a fifteen-month FET.

Jenkins became eligible for parole once again on May 12, 2003. The Panel denied his

parole release and imposed a thirty-six month FET. Jenkins appealed this decision to the Superior Court of New Jersey, Appellate Division. On April 16, 2004, the Appellate Division affirmed the Board's decision to deny parole and impose a thirty-six month FET. On March 29, 2005, Jenkins again came up for parole. The Board again denied his parole, establishing a thirty-month FET.

      **B.**      **James Jackson**

Plaintiff James Jackson is serving a twenty years to life sentence for murder. On April 13, 1981, he was convicted of murder and first degree robbery based upon his involvement in the robbery and shooting to death of a man in Newark, New Jersey. Jackson was sentenced to twenty years to live in prison. Prior to his conviction, Jackson had a prior record of criminal activity that included at least twelve adult convictions for various counts of robbery, being armed during the commission of a robbery, drug possession, weapons possession, breaking and entering, and assault and battery.

On October 25, 2000, a three-member Parole Board Panel denied Jackson parole, and set a ninety-six month FET. Jackson became eligible for parole again on July 25, 2005. On July 29, 2005, a two-member Parole Board Panel denied Jackson parole and referred the case to a three-member Panel for the establishment of an FET outside of the guidelines pursuant to N.J.A.C. 10A:71-3.21(d). The three-member panel denied Jackson parole and established an FET of seventy-two months.

Jenkins and Jackson filed a complaint against Defendants Brown and D'Amico alleging that several of the regulations relied upon by the Parole Board in denying them parole violated their rights under the due process clause of the Fourteenth Amendment and the *ex post facto*

clause of Article One, Sections Nine and Ten of the United States Constitution.[2]  The instant motion to dismiss, or in the alternative, for summary judgment, followed.

**III.    Standard of Review**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. *Id.* at 324.  In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, the non-moving party cannot rely on bare assertions or conclusory allegations to support his affirmative claims. *See, e.g., Morales v. Busbee*, 972 F. Supp. 254, 259 (D.N.J. 1997).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

---

[2]     Plaintiffs filed an amended complaint, asserting a claim for retaliation against Defendant Lawrence Gregorio, on February 20, 2007.

IV.     Analysis

    A.     **Plaintiffs' Claims Regarding the 1997 Amendment to N.J.S.A. 30:4-123.56(c)**

Plaintiffs allege that as applied to them and all those similarly situated, the 1997 amendment to N.J.S.A. 30:4-123.56(c) violates the *ex post facto* clause of the United States Constitution. Congress and the States are prohibited from passing *ex post facto* laws by the United States Constitution. U.S. Const., Art. I, § 9, cl. 3. An *ex post facto* law is one "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *See United States v. Brady*, 88 F.3d 225, 227 (3d Cir. 1996), cert. denied, 519 U.S. 1094 (1997) (quoting *Cummings v. Missouri*, 4 Wall. 227, 325-26 (1866)).

Two conditions must be satisfied in order for a law to violate the *ex post facto* clause. First, the law "must be retrospective, that is, it must apply to events occurring before its enactment." *Brady*, 88 F.3d at 228 (quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981)). Second, the law must "alter[] the definition of criminal conduct or increase[] the penalty by which a crime is punishable." *Brady*, 88 F.3d at 228 (quoting *California Dep't of Corrections v. Morales*, 514 U.S. 499, 506 n.3 (1995)). The Supreme Court has opined that the focus of the *ex post facto* inquiry is not whether the legislative change produces "some sort of ambiguous 'disadvantage,'" but rather, whether the change increases the penalty by which a crime is punishable. *See Morales*, 514 U.S. at 506 n.3.

The Court finds that N.J.S.A. 30:4-123.56(c), which governs Future Eligibility Terms ("FET"), does not violate the *ex post facto* clause as applied to Plaintiffs and those similarly situated. N.J.S.A. 30:4-123.56(c), as amended, provides:

> An inmate shall be released on parole on the new parole eligibility date unless information filed pursuant to a procedure identical to that set forth in [N.J.S.A. 30:4-123.54] indicates by a preponderance of the evidence that the inmate has failed to cooperate in his or her own rehabilitation or that there is a reasonable expectation that the inmate will violate conditions of parole . . . if released on parole at that time. The determination of whether the inmate shall be released on the new parole eligibility date shall be made pursuant to the procedure set forth in [N.J.S.A. 30:4-123.55] and this section.

Prior to 1997, parole could be denied based only on "new information." Since the 1997 amendment, however, parole can be denied based on information provided at earlier parole hearings. Plaintiffs argue that at their respective parole hearings, pursuant to the 1997 amendment, the Board relied on "old" information in denying them parole. They argue that because they were incarcerated for crimes that they committed prior to the 1997 amendment, allowing the Board to consider old information amounts to an *ex post facto* imposition of punishment for their original crimes. The Court disagrees.

The Court finds that the modification of which Plaintiffs complain is a procedural modification that does not bear upon the parole standards of inmates. Indeed, although the Parole Act was also amended to change the standard by which inmates are judged for parole eligibility, the former standard – the existence of a substantial likelihood that an inmate will commit a crime if paroled – remains in effect for inmates such as Jenkins and Jackson who were sentenced for crimes committed before the 1997 amendment to the statute. The amendment, as applied to Plaintiffs, simply broadens the scope of relevant evidence that may be considered by the Parole Board in considering an inmate's eligibility for parole.

In *Trantino v. New Jersey State Parole Board*, 331 N.J. Super. 577, 611 (App. Div. 2000), the New Jersey Appellate Division rejected an *ex post facto* challenge to the 1997

amendment to N.J.S.A. 30:4-123.56(c). The court reasoned that because the change in law was a procedural modification that did not constitute a substantive change in the parole release criteria, it did not violate the clause. *Trantino,* 331 N.J. Super. at 610 (citing *California Dep't. of Corrections v. Morales*, 514 U.S. 499 (1995)). The Court agrees with the court's reasoning in *Trantino*, and concludes that the 1997 statutory amendment does not modify the parole eligibility standard applicable to Jenkins and Jackson. Rather, as emphasized above, the amendment simply allows the Board to consider all available evidence relevant to the application of that standard. Therefore, the Court will dismiss Plaintiffs' claim.

   B.  **Plaintiffs' Claims Regarding Their Denial of Full Minimum Status**

  Plaintiffs allege that the DOC has a policy that prohibits inmates serving a life sentence from attaining "Full Minimum" classification. They argue that as a result, they were unable to participate in various rehabilitation programs, including placement into a halfway house, necessary to warrant a granting of parole by the Board. Plaintiffs argue that this alleged policy violates their rights under the Due Process Clause and amounts to a violation of the *ex post facto* clause of the Constitution.

  First, the Court dismisses Plaintiffs' due process claim. As Plaintiffs concede, there is no liberty interest under the Due Process Clause in an inmate's particular placement or custody status. Specifically, Plaintiffs have no liberty interest arising from the Due Process Clause itself in participating in rehabilitative programs, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976), in retaining minimum custody status, *Meachum v. Fano*, 427 U.S. 215, 223-25 (1976), or in being released on parole prior to the expiration of their sentences. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). Nor do Plaintiffs have a state-created

liberty interest to placement in a halfway house. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Asquith v. Dep't of Corrections*, 186 F.3d 407, 412 (3d Cir. 1999) ("Since an inmate is normally incarcerated in prison, Asquith's return to prison [from work release] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life, and, therefore, did not deprive him of a protected liberty interest.").

Plaintiffs acknowledge that they have no liberty interest under the Due Process Clause in their particular placement or custody status, but argue that denial of full minimum status is tantamount to a denial of parole. The Court is not persuaded by this argument. Under the standard for parole eligibility applied to Plaintiffs, an inmate will be granted parole unless there is a substantial likelihood that he will commit a crime if paroled. It is clear that this standard does not differentiate between custody statuses, and does not specify that only certain rehabilitation programs afforded to those on full minimum status will be considered.

Further, the record indicates that contrary to Plaintiffs' assertions, the DOC does not have a policy precluding inmates from attaining full minimum status. Plaintiffs point to a 2003 memorandum from a DOC official which indicates that inmates serving a life sentence should not be granted full minimum status. However, in a 2006 memorandum, William F. Plantier, Director of the Division of Operations of the DOC, specifically reminded all prison Administrators that although a life sentence or murder conviction may be considered a factor, it may not be used as the sole reason for denial of full minimum status. *See* September 6, 2006 Memorandum, attached to the affidavit of William Plantier as Exhibit A. Moreover, N.J.A.C. 10A:9-4.1 sets forth the six categories of custody status within the DOC. N.J.A.C. 10A:9-4.8(a)-(d) provides an exhaustive list of the specific categories of inmates who are ineligible for reduced

custody status. Inmates serving life sentences are not among those prohibited from attaining reduced custody within the DOC.

The Court observes that Plaintiffs were not denied parole based upon their failure to participate in rehabilitative programs. With regard to Jackson, the Parole Board specifically cited Jackson's participation in institutional programs and programs specific to his behavior as mitigating factors in denying his parole. *See* Parole Case Summary of James Jackson, attached to the affidavit of Douglas Chiesa as Exhibit B. With regard to Jenkins, the Board cited Jenkins' attempt to enroll in programs as a mitigating factor. *See* Parole Case Summary of Willie Jenkins, attached to the affidavit of Douglas Chiesa as Exhibit A. Thus, even in the event that Plaintiffs were precluded from participating in certain rehabilitative programs, it does not appear to the Court that this created any negative impact on denial of their parole.

In conclusion, the Court finds that the alleged policy at issue does not violate the due process clause. Nor would such policy violate the *ex post facto* clause. Accordingly, Defendants are granted summary judgment on this claim.

### C. Plaintiffs' Claims Regarding N.J.A.C. 10A:72-3.21(d)

Plaintiffs assert that N.J.A.C. 10A:72-3.21(d) is unconstitutionally vague because it does not provide a schedule for issuing a future eligibility term ("FET") when an inmate is assessed outside of the guidelines set forth in N.J.A.C. 10A:72-3.21(a). "A statute is unconstitutionally vague if 'men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *McAllister v. Attorney General of U.S.*, 444 F.3d 178, 186 (3d Cir. 2006) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). The Court finds that the regulation is not unconstitutionally vague and that Plaintiffs' claim must be dismissed.

9

N.J.A.C. 10A:72-3.21(a) sets forth a specific schedule of presumptive future eligibility terms to be established by the Board. In accordance with N.J.A.C. 10A:72-3.21(d), however, if the FET established pursuant to N.J.A.C. 10A:72-3.21(a) would be "clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior" then a three-member panel may establish an FET different from the schedule set forth in N.J.A.C. 10A:71-3.21(a). N.J.A.C. 10A:72-3.21(d).

The Board is not given unfettered discretion to impose an FEC outside of the schedule set forth in N.J.A.C. 10A:72-3.21(a). First, as explained above, the Board can only impose an FEC outside of the schedule where the scheduled FET is clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior. Further, the regulation requires that a determination must take into consideration those factors enumerated in N.J.A.C. 10A:71-3.11. *See* N.J.A.C. 10A:71-3.21(d). Specifically, when adjusting an FET, the Board must consider the twenty-three factors listed in N.J.A.C. 10A:72-3.21(b). Among the factors to be considered are: facts and circumstances of the offense; prison disciplinary history; aggregating and mitigating factors surrounding the offense; participation in institutional programs; statements by institutional staff, with supporting documentation, that the inmate is likely to commit a crime if released on parole; and, statements by the inmate reflecting the likelihood that he or she will commit another crime. N.J.A.C. 10A:71-3.11(b). Additionally, when an inmate sentenced to a term of life imprisonment receives an FET outside of the guidelines, the inmate is scheduled for an annual review to determine if a reduction in the FET is appropriate. *See* N.J.A.C. 10A:71-3.21(f).

The Court recognizes that N.J.A.C. 10A:72-3.21(d) does not provide specific FET

schedules when inmates are assessed outside of the guidelines set forth in N.J.A.C. 10A:72-3.21(a). However, because N.J.A.C. 10A:71-3.21(d) provides clear, explicit guidelines for imposing an FET beyond the schedule provided in N.J.A.C. 10A:71-3.21(a), the Court concludes that the regulation is not unconstitutionally vague.[3]  Therefore, this claim must be dismissed.

**V.      Conclusion**

For the reasons stated in this opinion, the Court grants Defendants' motion for summary judgment dismissing Plaintiffs' complaint against Defendants Brown and D'Amico. Because no other claims against Defendants Brown and D'Amico are pending, the Court directs that they be terminated as parties to this action.   An appropriate order accompanies this opinion.

Dated: June 20, 2007                                                        /s/ Joel A. Pisano
                                                                                       JOEL A. PISANO, U.S.D.J.

---

[3]     In *Perry v. McGargo*, when considering this same issue in the context of a petition for a writ of habeas corpus, the court similarly found that N.J.A.C. 10A:71-3.21(d) was not unconstitutionally vague. *Perry v. McGargo*, No. Civ. A. 03-551, 2005 WL 2789386, at *4-5 (D.N.J. Oct. 26, 2005).